# EXHIBIT A

# EXHIBIT A

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/11/2023 1:25 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

1  JONATHAN A. STIEGLITZ
   (SBN 278028)
2  jonathan.a.stieglitz@gmail.com
   THE LAW OFFICES OF
3  JONATHAN A. STIEGLITZ
   11845 W. Olympic Blvd., Ste. 800
4  Los Angeles, California 90064
   Telephone:  (323) 979-2063
5  Facsimile:   (323) 488-6748

6  Attorney for Plaintiff
   Tanya Dancekelly, Advanced Weight Loss Surgical Association,
7  Minimally Invasive Surgical Association

8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                     COUNTY OF LOS ANGELES

11

12 Tanya Dancekelly, Advanced          Case No.:  23STCV07994
   Weight Loss Surgical Association,
   Minimally Invasive Surgical         Complaint For:
13 Association,

14         Plaintiff,                  1.  NEGLIGENT
                                           MISREPRESENTATION
15     v.
                                          Or in the alternative
16 Deloitte LLP and DOES 1-10,
                                       2.  RECOVERY OF BENEFITS
17         Defendant.                      UNDER 29 U.S.C. §1132 (a)(1)(B)

18                                     **(Jury Trial Requested)**

19                                     Damages - $120,000.00

20

21

22

23

24

25

26

27

28

                         Complaint

Plaintiff Tanya Dancekelly, Advanced Weight Loss Surgical Association, Minimally Invasive Surgical Association (hereinafter referred to as "PLAINTIFFS") complains and alleges:

## PARTIES

1. DEFENDANT, Deloitte LLP ("DEFENDANT") is and was licensed to do business in and is and was doing business in the State of California. DEFENDANT is, in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

2. United Healthcare Services, Inc. ("UHS") is the administrator and representative for Defendant in connection with medical services at issue in this suit.

3. Advanced Weight Loss Surgical Association ("Advanced") is and at all relevant times was a medical company, organized and existing under the laws of the State of California. Advanced Weight Loss Surgical Association is and at all relevant times was in good standing under the laws of the State of California.

4. Minimally Invasive Surgical Association ("Minimally") is and at all relevant times was a medical company, organized and existing under the laws of the State of California. Minimally is and at all relevant times was in good standing under the laws of the State of California.

5. Advanced and Minimally together will be referred to as "Medical Providers".

6. Plaintiff, Tanya Dancekelly ("Patient"), is and at all relevant times was a resident of the State of California.

7. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFFS, who therefore sues said defendants by such fictitious names. PLAINTIFFS are informed and believes and thereon alleges that each of the

defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFFS. PLAINTIFFS will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

8. At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and Patient.

## **GENERAL ALLEGATIONS**

9. This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Providers for surgical care, treatment and procedures provided to Patient, who is an insured, member, policyholder, certificate-holder and is and was otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by UHS and DEFENDANT and DOES 1 through 10, inclusive.

10. Medical Providers are bringing suit solely based on the representations made to Medical Providers during their communications with UHS on behalf of Defendant.

11. Patient is bringing suit solely based on Patient's rights under Patient's health plan.

- 3 -
COMPLAINT

12. Patient received insurance through Defendant, Patient's employer. Patient's receipt of health benefits through Defendant is a significant part of Patient's compensation from Defendant. Patient obtains insurance through Defendant for the specific purpose of ensuring that Patient will have access to medically necessary treatments, care, procedures, and surgeries by medical practitioners like Medical Providers and ensuring that DEFENDANT would pay for the health care expenses incurred by Patient.

13. Patient pays Patient's insurance premiums based on the information provided to Patient by Defendant and as Patient is directed to do by Defendant.

14. It is standard practice in the health care industry that when medical providers enter into a written preferred provider's contract, medical providers agree to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being preferred or contracted providers.

15. Those benefits include an increased volume of business because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted providers, such as advertising that the providers are "in network" and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from contracted providers.

16. Conversely, when medical providers, such as Medical Providers, do not have a written contract or preferred provider agreement, the medical providers receive no referrals.

17. The medical providers have no obligation to reduce their charges. The health plan is not entitled to a discount from the medical providers' total bill charge for the services rendered, because it is not providing the medical providers with in-network medical providers benefits, such as increased patient volume and direct payment obligations.

18. The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers or network holders

such as Defendant's representative UHS have contracted rates for in-network providers that are so meager, one-sided, and onerous, that many providers like Medical Providers have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

19. Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary, and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

20. The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[1]

21. Based upon these criteria, Medical Providers' charges are usual, customary, and reasonable. Medical Providers charged DEFENDANT the same fees that it charges all other payors. Medical Providers' fees are comparable to the prevailing provider rates in the geographic areas to the one in which the services were provided.

22. DEFENDANT and UHS use the term UCR in their policies.

---

[1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (February 1, 2023), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

23. When DEFENDANT or UHS on Defendant's behalf uses the term UCR for the price of a medical service, DEFEDANT and/or UHS will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.[2]

24. Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT or UHS and it is available for free in a more limited fashion for use by consumers.[3]

25. When a medical provider like Medical Provider's is told that DEFENDANT or UHS will be paying a claim based on UCR, Medical Providers expect that DEFENDANT or UHS will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

26. Plaintiffs understands Patient's health plan to be a plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). As a result, Plaintiff contends that Plaintiff's health plan is an ERISA health plan ("ERISA Plan").

27. Patient believes and alleges that the ERISA Plan requires that Defendant make payment for medical services at the UCR rate. However, Patient contends that Defendant did not pay based on the UCR rate and instead paid based on Medicare.

---

[2] United Healthcare, Information on Payment of Out-of-Network Benefits (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

[3] *See* fairhealthconsumer.org, (February 1, 2023), https://www.fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

28. For the claims at issue in this suit, Plaintiffs have spent significant time and effort attempting to jump through all of the hoops which UHS on behalf of Defendant has put Plaintiffs through to obtain proper payment for the medical services at the UCR rate.

29. Based either on the representations made by Defendant to Medical Provider or separately in the alternative based Patient's ERISA Plan, Defendant is obligated to pay for the medical services provided to Patient at the UCR rate. Defendant has failed to do so and so Plaintiff's have brought suit.

## SPECIFIC FACTS

30. On December 21, 2020, Patient received surgical procedures from Medical Providers.

31. On October 12, 2020, so as to determine whether or not to provide services, Medical Providers' employee, Esme N., obtained representations from UHS and DEFENDANT's representative, Shawn Z., regarding the manner in which Medical Provider would be paid for services.

32. Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

33. UHS on behalf of Defendant represented to Medical Providers that Patient's deductible is and was $2,800.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $5,800.00 and that to date for that calendar year Patient had paid $3,588.47.

34. Medical Providers asked: does Defendant pay based on UCR for procedure codes 43775, 43281 and 43774 and other similar codes within the same family?

35. UHS on behalf of Defendant represented to Medical Providers that for services in connection with procedure codes 43775, 43281 and 43774 and other similar codes within the same family Defendant pays the UCR rate.

36. Medical Providers asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 43775, 43281 and 43774 and other similar codes within the same family Defendant pays the UCR rate?

37. UHS on behalf of Defendant represented to Medical Providers that for services in connection with procedure codes 43775, 43281 and 43774 and other similar codes within the same family pays the UCR rate Defendant's payment would not be based on the Medicare Fee Schedule.

38. All of the information obtained was documented by MEDICAL PROVIDERS as part of MEDICAL PROVIDERS' office policy and practice.

39. At no time prior to the provision of services to Patient by MEDICAL PROVIDERS were MEDICAL PROVIDERS advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

40. UHS on behalf of DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDERS on notice of any reduction in the originally stated payment percentage.

41. Despite having UHS make these representations on its behalf, DEFENDANT knew that it would not be paying Medical Providers at the UCR rate.

42. Despite having UHS make these representations on its behalf, DEFENDANT knew that it would be paying Medical Providers at a Medicare rate.

43. MEDICAL PROVIDERS were never provided with a copy of Patient's plan or even a portion of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDERs could not even make itself aware of any reduction of the payment amount.

44. Medical Providers relied and provided services solely based on UHS' representations, promises and statements on behalf of DEFENDANT. Statements

which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took UHS' representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations. Following the procedure, Medical Providers submitted bills both to Patient and to Defendant in connection with the services provided to Patient for a total amount of $120,000.00.

45. In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient in accordance with the terms of Patient's ERISA Plan.

46. Patient contends that according to the ERISA Plan Defendant is obligated to pay the UCR rate for the medical services provided.

47. Instead, all Defendant paid was $2,923.03, an amount far less than the UCR value of the services.

48. The amount Defendant paid is the same amount that would have been paid by Medicare for the same services.

49. Plaintiffs appealed and submitted all documents requested by UHS on behalf of Defendant.

50. UHS on behalf of Defendant in some instances did not respond or claimed that it still had not received the documents.

51. UHS on behalf of Defendant would also simply refuse to take the documents provided by Medical Providers on Plaintiff's behalf claiming that there was no authorization on file.

52. Plaintiffs could not obtain proper payment and exhausted all appeals.

53. Plaintiffs seek to obtain proper payment at the UCR rate based on UHS' representations to Medical Providers or in the alternative based on the benefits owed to Patient under the ERISA Plan.

**FIRST CAUSE OF ACTION**

**FOR NEGLIGENT MISREPRESENTATION**

**Medical Providers Only**

54. Medical Providers incorporate all non-ERISA related paragraphs as though fully set forth herein.

55. UHS on behalf of DEFENDANT falsely represented to Medical Providers that payment for services would be based on UCR and not Medicare.

56. UHS on behalf of DEFENDANT knew that any payment made to Medical Providers would not be made the UCR rate and would instead be made at the Medicare rate.

57. UHS on behalf of DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

58. Medical Providers then relied on UHS on behalf of DEFENDANT's misrepresentation and provided the services to Patient. Medical Provider has been damaged in not receiving payment at the represented UCR rate.

59. Medical Providers are owed an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS**

**Patient Only**

60. Patient incorporates by reference all previous paragraphs as though fully set forth herein.

61. This cause of action is alleged by Patient for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by UHS on behalf of DEFENDANT.

62. Patient seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Patient is a "beneficiary" entitled to collect benefits, and

| | |
|---|---|
| 1 | is the "claimant" for purposes of the ERISA statute and regulations. ERISA |
| 2 | authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against |
| 3 | DEFENDANT the party with actual control over the benefit and payment |
| 4 | determinations with respect to medical services. |
| 5 |     63.    DEFENDANT is the payor of benefits |
| 6 |     64.    By reason of the foregoing, Patient is entitled to recover ERISA |
| 7 | benefits due and owing in an amount to be proven at trial, and Patient seeks |
| 8 | recovery of such benefits by way of the present action. |
| 9 | /// |
| 10 | /// |
| 11 | /// |
| 12 | /// |
| 13 | /// |
| 14 | /// |
| 15 | /// |
| 16 | /// |
| 17 | /// |
| 18 | /// |
| 19 | /// |
| 20 | /// |
| 21 | /// |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

**PRAYER FOR RELIEF**

**WHEREFORE,** Tanya Dancekelly, Advanced Weight Loss Surgical Association, Minimally Invasive Surgical Association pray for judgment against defendants as follows:

1. For compensatory damages in an amount to be determined, plus statutory interest;

2. For restitution in an amount to be determined, plus statutory interest;

3. For a declaration that DEFENDANT is obligated to pay plaintiff all monies owed for services rendered to the Patient;

4. For Attorney Fees; and

5. For such other relief as the Court deems just and appropriate.

Dated: April 11, 2023
LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
JONATHAN A. STIEGLITZ
Tanya Dancekelly, Advanced Weight Loss Surgical Association, Minimally Invasive Surgical Association

**DEMAND FOR JURY TRIAL**

Plaintiff, Tanya Dancekelly, Advanced Weight Loss Surgical Association, Minimally Invasive Surgical Association, hereby demand a jury trial as provided by law.

Dated: April 11, 2023
LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
JONATHAN A. STIEGLITZ
Attorneys for Plaintiff,
Tanya Dancekelly, Advanced Weight Loss Surgical Association, Minimally Invasive Surgical Association